**Gisela J. THURSTON**

v.

**CONTINENTAL CASUALTY COMPANY, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1989.

Decided Dec. 26, 1989.

Ernest J. Babcock (orally), John G. Connor, Friedman & Babcock, Portland, for plaintiff.

Jennifer Wriggins (orally), Jack Simmons, Berman, Simmons & Goldberg, Lewiston, for Hunt, Thompson & Bowie.

Lewis V. Vafiades, Amy Faircloth (orally), Vafiades, Brountas & Kominsky, Bangor, for Continental Cas. Co.

Before ROBERTS and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

In this case we decide that a legal malpractice claim may be assigned; that before the 1987 amendments to Maine's partnership law, a Maine partnership was not a suable entity (except in certain real estate related matters); that an insured's insolvency and inability to pay an excess judgment do not foreclose a damage claim against its insurance carrier and lawyer for

failure to defend or settle within policy limits; and that certain other related issues involve genuine issues of material fact. We therefore remand for entry of an order dismissing the partnership defendant, but otherwise vacate the summary judgment of the Superior Court (Cumberland County, *Fritzsche, J.*). Because we are reviewing the defendants' motions to dismiss and for summary judgment, we recount the facts and consider the allegations of the pleadings in a light most favorable to the plaintiff.

Inadequate legal representation and misconduct of 3K Kamper Ko.'s insurance carrier in a products liability action allegedly caused 3K to suffer judgment far in excess of its policy limits. The case could have been settled well within the amount of the policy. At the time of the judgment, 3K was not actively engaged in business, had entered into a settlement with its bank creditor by which it surrendered all its assets, and had allowed itself to be suspended as a corporation. In addition, 3K's two principals had been killed in an accident prior to the trial.

3K has been unable to pay the excess judgment. 3K's stockholders, in order to settle some claims by the products liability plaintiff against them, agreed to have 3K assign to her all 3K's rights against its lawyers and insurance carrier. As a result, she has brought this action against the insurance carrier, the individual lawyer and law firm for legal malpractice and failure to defend or settle. Since her rights are only those of 3K Kamper Ko., however, we shall refer to 3K throughout to avoid confusion.

### ASSIGNMENT OF A LEGAL MALPRACTICE CLAIM

■ We hold first that there is no reason to prohibit the assignment of a legal malpractice claim in a situation such as this. We are not here confronted with the establishment of a general market for such claims; this assignee has an intimate connection with the underlying lawsuit. Although some cases from other jurisdictions flatly prohibit the assignment of any legal malpractice claim, *e.g., Goodley v. Wank and Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976); *Christison v. Jones,* 83 Ill.App.3d 334, 338–39, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (1980), their reasoning is not persuasive. A legal malpractice claim is not for personal injury, but for economic harm. *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 526, 539 A.2d 357, 359 (1988). The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like 3K from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit. The Superior Court properly denied the lawyer defendants' motion to dismiss.

### A PARTNERSHIP AS A SUABLE ENTITY

■ The next issue is whether one defendant, a law partnership, was properly before the Superior Court. In 1852, the Law Court recognized the common law rule that a partnership was not a legal entity that could be sued; instead individual partners had to be named specifically. *Macomber v. Wright,* 35 Me. 156, 157 (1852). Commentators treated this holding as the existing state of Maine law as late as 1970. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4.4 at 65 (2d ed. 1970). In 1973, Maine adopted the Uniform Partnership Act. *See* 31 M.R.S.A. §§ 281–323 (1978 & Pamph.1989). Unfortunately the Act does not squarely address the issue of whether a partnership can be sued. Its first draftsman, Dean Ames, adopted the entity theory of partnership, which would permit a suit. *See* 1 A. Bromberg & L. Ribstein, *Partnership* § 1.03 at 21 (1988). His successor, William Draper Lewis, endorsed the contrary, the aggregate theory of partnership, which would not permit a suit. Unif. Partnership Act comm'rs prefatory note, 6 U.L.A. 6 (1969). As a result, it is generally agreed that the Act shows evidence of both theories and does not an-

swer the question whether a partnership can be sued. *See* A. Bromberg & L. Ribstein, *supra*, at 21–3.

In 1987 we decided that a partnership could sue or be sued in a lawsuit involving real estate held in the partnership's name, but expressly limited our decision to that situation. *New England Herald Dev. Group v. Falmouth*, 521 A.2d 693 (Me. 1987). That same year the Legislature enacted specific legislation making partnerships subject to suit in general, 31 M.R.S.A. § 290–A (Pamph.1989), but the legislation does not apply to this lawsuit commenced on January 30, 1984.

Against this background, we conclude that the Uniform Partnership Act as adopted in Maine before its 1987 amendment did not permit partnerships to be sued directly in cases like this. The Law Court's 1852 pronouncement of the common law rule to that effect was unequivocal; the 1973 adoption of the Uniform Partnership Act did not address the issue; and there is no argument comparable to that in partnership real estate cases that led us to decide in 1987 that "it is appropriate that the partnership should be allowed to sue or be sued in its partnership name" in circumstances where title is held in the partnership name and "can only be conveyed in the partnership name," 521 A.2d at 697 n. 9. The Superior Court, therefore, should have granted the partnership's motion to dismiss.

## DAMAGE CLAIMS FOR AN EXCESS JUDGMENT

■ In debating the ability of 3K to recover any damages without having first paid the excess judgment, the parties disagree over whether the summary judgment evidence competently established that 3K was insolvent. We conclude that even if the defendants' proof has established that 3K was insolvent at the time of the excess judgment, that fact does not foreclose damages for the defendants' alleged malpractice or failure to defend or settle. It may be that 3K has not been damaged in the full amount of the excess judgment, for the proof may show that no such judgment could ever have been recovered against 3K. There are other elements of damages, however—for example, injury to credit rating, injury to reputation (3K may be able to prove that its name's good will possessed a value that would have been worth transferring to another had it not been for the excess judgment), and expenses incurred in dealing with the existence of the judgment and settling the claim.[1] The point is that the choice is not between collecting the entire excess judgment and no damages at all.

■ To that extent, we align ourselves with those states that have determined that an insured need not pay an excess judgment in order to recover damages.[2] *See, e.g., Frankenmuth Mut. Ins. Co. v. Keeley*, 433 Mich. 525, 447 N.W.2d 691 (1989); *Henegan v. Merchants Mut. Ins. Co.*, 31 A.D.2d 12, 294 N.Y.S.2d 547 (1968); *Carter v. Pioneer Mut. Casualty Co.*, 67 Ohio St.2d 146, 423 N.E.2d 188 (1981); *Crabb v. National Indem. Co.*, 87 S.D. 222, 205 N.W.2d 633 (1973). Consequently, 3K's failure to pay the excess judgment did not entitle the defendants to summary judgment.[3] We do not agree, however, that the

1. There is also a claim for punitive damages. We express no opinion on its viability, or whether the causes of action here sound in contract or tort. These issues have not been briefed or argued.

2. The collectability of the excess judgment against 3K is a different issue from the collectability issue we considered in *Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me.1987). There a client brought a malpractice action against his lawyer for failing to represent the client properly in suing a third party. We observed that there could be no damage flowing from the malpractice unless the original lawsuit would have resulted in recovery; otherwise the plaintiff lost nothing on account of the malpractice. Here, on the other hand, we are dealing with a judgment already entered *against* a client; it is the lawyer (insurance carrier) who is trying to show that *despite* the judgment against the client (insured), there is no damage. Here, inability to *pay* the excess judgment does not foreclose other types of damage in the way inability to *collect* a judgment did in *Jourdain*.

3. We agree with the Superior Court that evidence that 3K ordered its lawyers not to settle is an insufficient basis for summary judgment;

amount of the excess judgment is the measure of damages. As in any other case, 3K (here, its assignee) must prove on remand the actual economic harm it suffered because of the alleged legal malpractice or failure to defend or settle.

## MISCELLANEOUS

In their motion to dismiss, the defendants challenged the effectiveness of 3K's assignment to the plaintiff because of asserted inadequacies in the assignment process. The complaint, however, alleged that 3K had assigned the claims. That is all that was necessary to survive the motion to dismiss.

The entry is:

Judgment vacated and remanded for entry of an order dismissing the partnership defendant and for further proceedings consistent with the opinion herein.

All concurring.

there was no evidence that the lawyers had fully informed 3K of the risks.