STATE OF MAINE

ANDROSCOGGIN, SS.

TOMMY M. BUREAU,
d/b/a BUREAU'S BILLIARDS,

Plaintiff

v.

DEL GENDRON, DAVE GENDRON,
GENDRON REALTY, PAUL GOSSELIN,
GOSSELIN, DUBORD & RABASCO, P.A.,
and MILLETT-POTVIN REALTY,

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-03
TED -AND- 10/27/2000

DONALD L. GARBRECHT
LAW LIBRARY

NOV 2 2000

DECISION AND ORDER
ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

RECEIVED & FILED

OCT 27 2000
ANDROSCOGGIN
SUPERIOR COURT

The plaintiff initiated this action seeking damages for the failure of his business based on the conduct and actions, or the failure to act, of the several defendants.

Defendant Paul Gosselin is a member of the law firm of Gosselin, Dubord & Rabasco, P.A. (Gosselin), and acted as plaintiff's attorney during negotiations to lease property from the Gendrons. Defendant Millett-Potvin (Millett) is a local real estate firm that was assisting plaintiff to relocate his growing business.

After leasing new premises from Gendron Realty, Bureau's business declined and he was forced to close. The decline in business is attributed to a number of reasons and ultimately resulted in Bureau filing a Chapter 7 bankruptcy proceeding. As part of his bankruptcy case, he listed as an asset his legal claims against the Gendrons. He did not include any claims against Gosselin or Millett as assets.

Gosselin and Millett have both moved for summary judgment on the primary grounds that Bureau lacks standing because the bankruptcy trustee never released or abandoned plaintiff's claims against Gosselin and Millett as he did on the listed claim against Gendron. The defendants assert that all rights to any claim against them is vested solely in the bankruptcy trustee. The court agrees.

In bankruptcy, all assets of the debtor, including all causes of action, become part of the bankruptcy estate upon filing of the petition. 11 U.S.C. § 541. In a Chapter 7 proceeding, the trustee in bankruptcy is charged with the duty to collect and liquidate the assets of the estate, and to distribute the available assets (if any) to the creditors. 11 U.S.C. § 704. The debtor is required to list all of his assets on his or her petition. If the debtor lists a cause of action as an asset, the trustee can then exercise his discretion to decide whether to pursue the claim or not.

If the trustee elects not to pursue the claim, because it is burdensome to the estate or "of inconsequential value," the trustee may formally abandon the claim, either upon his own initiative, or upon the motion of any party (including the debtor). 11 U.S.C. § 554. If the trustee takes no action one way or the other with respect to the claim during the pendency of the bankruptcy proceeding, then the "ownership" of the cause of action reverts back to the debtor by operation of law when the bankruptcy cases is closed. 11 U.S.C. 554(c).

It is not for this court to decide what action the trustee ought to take. In order to make an appropriate decision the trustee must be able to evaluate the entire

2

claim. If the debtor fails to list all the causes of action as an asset of the estate, the claims do not revert back to the debtor at the end of the bankruptcy case, but rather continue to be property of the estate. 11 U.S.C. § 554(d). In this case, Bureau never listed any claims against Gosselin or Millett as an asset in his petition. Therefore the claim belongs to the bankruptcy estate, even though the case in closed. *See Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995). There is simply no concept of "assumed abandonment" even if a trustee has actual knowledge. *See In re Rothwell*, 159 B.R. 374, 377 (Bankr.D. Mass. 1993). Furthermore, "[a]bandonment presupposes knowledge. There can as a rule, therefore, be no abandonment by mere operation of law of property that was not listed in the debtors schedules or otherwise disclosed to the creditors . . . ." *Collier on Bankruptcy*, § 554.03 at 554-11 (1994).

At oral argument, the plaintiff argued for the first time that a claim of legal malpractice is not assignable and could not be a part of the bankrupt estate. He cites *Matter of Thompson*, 5 B.R. 18, 20 (Bankr.D. Me. 1979); however, that case involved exclusion of proceeds from a worker compensation lump sum settlement which were declared exempt under Maine statute. *See* 39 M.R.S.A. § 67, repealed and replaced by 39-A M.R.S.A. § 106. P.L. 1991, c. 885 §§ A-7, A-8. He also argues that *New England Mortgage Services Co. v. Petit*, 590 A.2d 1054 (Me. 1991) limits assignment of legal malpractice claims and that the assignment permitted in *Thurston v. Continental Casualty Company*, 567 A.2d 922 (Me. 1989), is limited to the fact pattern of that case. The court disagrees.

The Court in *Thurston* specifically said "that there is no reason to prohibit the assignment of a legal malpractice claim in a case like this. *Id*. at 923. The key to the assignment is that the "assignee has an intimate connection with the underlying lawsuit." *Id*. In *Petit*, the Court said that the plaintiff could not obtain an attachment or lien upon potential assets from a legal malpractice claim where the action was based on the Uniform Commercial Code where liens are regulated by statute. The Court further noted that the judgment creditor, unlike the plaintiff in *Thurston*, had "neither the intimate connection nor the clear interest in the claim necessary to become a party to that action." *Petit*, 590 A.2d at 1056.

In the present case, the trustee of Bureau's estate has authority over two other legal claims arising out of the same transactions and may have a "clear interest" in reopening the case. The trustee may determine that claims against all three parties strengthens the claim that he previously renounced. *See Thurston* at 923 ("the argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing [a party like a bankruptcy trustee] from realizing the value of a malpractice claim in what may be the most efficient way possible, namely its assignment to someone else with a clear interest in the claim who has the time, energy and resources to bring the lawsuit.")

The defendants seek summary judgment and dismissal with prejudice. Although they are entitled to prevail on the pending motions they have not presented sufficient reason or precedent to warrant a dismissal with prejudice.

4

The clerk will make the following entry:

1. Defendant Paul Gosselin and Gosselin, Dubord & Rabasco's Motion for Summary Judgment is granted. All claims against these defendants are dismissed.

2. Defendant Millett-Potvin's Motion for Summary Judgment is granted. All claims against this defendant are dismissed.

3. No costs to any party.

So ordered.

DATED: October 27, 2000

Thomas E. Delahanty II
Justice, Superior Court

Thomas F. Hallett — for the Plaintiff

John S. Whitman for Defendant Millett-Potvin Realty

James M. Bowie for Defendants Paul Gosselin, and Gosselin, Dubord & Rabasco

Susan E. Oram and Martica S. Douglas for all the Gendron Defendant

5

STATE OF MAINE
Androscoggin, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-00-03

TED -AND-3/21/2001

TOMMY M. BUREAU,
d/b/a BUREAU'S BILLIARDS,

    Plaintiff

v.

DECISION AND ORDER
ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

DEL GENDRON, DAVE GENDRON and
GENDRON REALTY

    Defendants

## I. BACKGROUND

The plaintiff initiated this action seeking damages for the failure of his business based on the conduct and actions, or the failure to act, of the several defendants.[1]

The plaintiff leased a business premises from Gendron Realty ("Gendron")[2] on Lisbon Street in Lewiston. The circumstances here surround the negotiation of the lease with particular attention to the inclusion of 72 parking spaces, sewer, air conditioning and "help" with making rental payments.

---

[1] The court has previously granted summary judgment in favor of two other defendants who were originally joined as part of this case: Plaintiff's attorney and a real estate agency that was assisting plaintiff to relocate his business.

[2] Del Gendron and Dave Gendron are principals in Gendron Realty. For purposes of this Order they are collectively referred to as "Gendron."

After leasing the premises from Gendron Realty, Bureau's business declined and he was forced to close. Bureau claims the the decline in business was caused by a number of factors, including road reconstruction and the taking of part of the parking lot by eminent domain resulting in the reduction of the number of parking spaces. The legal taking of land actually occured prior to formation of the parties' lease; but the construction and the physical taking occurred afterwards. Bureau's claims are founded on allegations that the Gendrons knew of the eminent domain proceedings, that construction would start shortly thereafter and that part of the parking lot would be lost. Bureau ultimately filied a Chapter 7 bankruptcy proceeding.

The plaintiff asserts numerous claims against the defendants that are discussed separately below. The defendants have filed a Motion for Summary Judgment as to all counts.

## II. MOTION FOR SUMMARY JUDGMENT

The procedures for summary judgment are governed by M.R.Civ.P. 7(d) and 56.[3] The parties have an obligation to follow the rules to assist the court in determining whether there are any material facts that remain in dispute. When the moving party (defendants) sets out certain facts in the Statement of Material Facts and they are not controverted by the plaintiff, those facts are deemed to be admitted.

---

[3] The requirements for filings on motions for summary judgment have been substantially amended, effective January 1, 2001, but are not applicable to the present motion.

M.R. Civ. P. 7(d)(2). *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, 742 A.2d 933. Consequently, much of the court's decision is based on Rule 7(d) insufficiencies.

## III. DISCUSSION

### A. Count I, Negligent Misrepresentation.

Bureau alleges that defendants misrepresented "the suitability" of the premises and failed to disclose "all information necessary to fully assess the suitability of the Gendron site" for his business needs. Reviewing Bureau's 7(d) Statement of Material Facts, it appears that the only allegations that are relevant to this claim are that when he met with Gendron agents at the premises in September and during negotiations for the lease subsequent to the eminent domain they told him that the 72 existing parking spaces would be his to use throughout the tenancy at the premises. The eminent domain occurred on August 9, 1994 and after construction in 1995, the premises lost 19 parking spaces.

In this case, even if Bureau did not know of the eminent domain, nor was it obvious to him before signing the lease because construction did not begin until after the lease was signed, *See Photias v. Graham*, 14 F.Supp.2d 126 (D.Me. 1998); *Ferrel v. Cox*, 617 A.2d 1003 (Me. 1992) (holding that a plaintiff's reliance on fraudulent misrepresentations of defendant is unjustified only if plaintiff knows representation is false or its falsity is obvious to plaintiff), the alleged misrepresentation here is based upon a future promise of performance under the lease with respect to parking spaces. It is not a misrepresentation concerning a past

3

or existing fact. The defendant is entitled to summary judgment summary judgment with respect to this claim.

## B. Count II, Fraudulent Concealment.

Bureau alleges that the defendants breached a duty to disclose defects in the premises, including, but not limited to "the taking of parking by eminent domain, the imminent road construction, the defective air conditioning, defective sewer hook-up, and defective parking;" that the defendants knowingly made false representations as to the suitability of the property to the detriment of plaintiff as to the parking; and, that defendants represented the air conditioning and sewer was good and in proper working order when they knew those representations to be false. The court notes, however, that the only allegations contained in Bureau's 7(d) statements concern the parking lot as mentioned above. Therefore, the court restricts its analysis to this alleged misrepresentation.

Under Maine law, a claim of fraud requires (1) a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it was true or false, (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relied on the representation as true and acted upon it to his detriment or damage. *See Veilleux v. National Broadcasting Co, Inc.*, 8 F.Supp.2d 23 (D.Me. 1998); *Jourdain v. Dineen*, 527 A.2d 1304 (Me. 1987). Each element of fraud must be proved by clear and convincing evidence. The existence of a false representation and justifiable reliance are among the

4

essential fact elements of a fraud claim. *See Wildes v. Ocean Nat. Bank of Kennebunk*, 498 A.2d 601 (Me. 1985). Pecuniary loss is an essential element of proof in both negligent and fraudulent misrepresentation claims, and consists of any loss of money or loss of something that money could acquire. *Veilleux*, 8 F.Supp.2d 23 (promises of future performance were actionable under the theory of fraudulent misrepresentation where alleged promises were specific and repeated assurances and there was evidence that the promises were made with knowledge that they would not be honored).

Failure to perform a promise, without more, does not constitute fraud. *See Lavery v. Kearns*, 792 F.Supp. 847 (D.Me. 1992). In other words, the misrepresentation must be made with respect to past or existing facts. *See Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646 (Me. 1979) (stating that a clear distinction exists between general "fraud" that will vitiate a contract and "deceit" or "fraudulent representation" which are actionable).

In this case, Bureau's Statement of Material Facts refers only to a promise of future performance, namely that he will have 72 parking spaces during the term of the lease. This alleged fraudulent representation is only actionable if Gendron made specific and repeated assurances with respect to the parking with knowledge of the fact that 72 parking spaces would not always be available. The 7(d) statement mentions assurances when he visited the premises in early September and during negotiations; however, Bureau does not allege that the promises were made with

5

knowledge of their falsity in the Statement of Material Facts. Even a liberal reading of his affidavit does not provide this court with sufficient allegations to generate a genuine issue of material fact as to the Gendron's knowledge of the falsity of their alleged representations concerning the parking. This court must grant summary judgment with respect to this claim based on a theory of fraudulent representation.

Mr. Bureau also alleges that the Gendrons' mere failure to disclose the eminent domain and its effect on available parking spaces at the premises is actionable under a theory of fraudulent nondisclosure. In Maine, both omissions and affirmative defenses are actionable under a theory of fraudulent representation. *See Reed Paper Co. v. Procter & Gamble Distributing Co.*, 807 F.Supp. 840 (D.Me. 1992). A fraudulent nondisclosure claim, however, requires either active concealment by the defendant or a special confidential relationship imposing a duty of disclosure on the defendant and the fiduciary intentionally fails to disclose material information. *See Glynn v. Atlantic Seabord Corp.*, 728 A.2d 117 (Me. 1999); *F.D.I.C. v. S. Prawer & Co.*, 829 F.Supp. 439 (D.Me. 1993). Neither exists here. In this case, the Gendrons' 7(d) statement states that there was no fiduciary relationship between Gendron Realty and Bureau. This is not disputed in plaintiff's response. The court therefore assumes that there is no fiduciary relationship. In addition, Bureau does not allege in his 7(d) statement any conduct on behalf of the Gendron defendants that constitutes active concealment. *See Leighton v. Fleet Bank of Maine*, 634 A.2d 453 (Me. 1993).

6

The defendants are entitled to summary judgment with respect to this claim based on a theory of fraudulent nondisclosure.

## C. Count III, Breach of Contract based upon fraud and promissory estoppel.

Bureau alleges that in November, 1994, Gendron promised the plaintiff that if he ran into financial trouble, he would help him out, including reducing or waiving rental payments. In reliance, Bureau claims he incurred additional renovation expenses and operational costs, despite the fact that Gendron knew he had no intention of helping Bureau. This count is based on the alleged offer to reduce rent.

The court must deny this claim because the offer is not sufficiently definite that the court can define the rights of the parties. Furthermore, there is no signed writing or allegations of part performance that would take the contract out of the statute of frauds.

Likewise, with respect to promissory estoppel, Bureau's 7(d) statement does not specifically state that the Gendrons promised to waive rent payment, nor does it state under what circumstances the Gendrons would waive such payments. It merely states that the Gendrons promised to "help" with the rent if the construction caused problems.

The court cannot allow the promissory estoppel or the breach of contract claim to withstand summary judgment on this vague assertion. This is not sufficiently clear, nor may such a vague assertion form the basis for justifiable

7

reliance. Bureau did not know or allege how much rent would be waived, if any. The court is to consider only those portions of the record referred to in the Statement of Material Facts. Mr. Bureau's affidavit does not reveal any more specific details. In fact, Mr. Bureau's deposition reveals the following:

> Q. Did [Mr. Gendron] even -- was he ever more specific about what his -- what he was intending when he said if you run into any problems, I'll help you?
>
> A. That's all he said, he never said another word.

Bureau depo. at 295.

This is not sufficiently definite to state a claim for promissory estoppel or breach of contract or to provide a basis for reasonable reliance. Summary judgmanr is appropriate.

## D. Count IV, Negligence, Breach of Contract and Implired Duty of Faith and Fair Dealing.

Bureau alleges that Mr. Gendron was required under the terms of the lease and by law to provide adequate sewer, air conditioning and parking and that he had an implied duty of good faith and fair dealing; further, Bureau claims that there was a promise to provide 72 parking spaces. This does not appear in the lease, nor does Bureau's 7(d) statement make allegations with respect to air conditioning or sewer. Therefore, to the extent that the breach of contract and implied duty of good faith and fair dealing are based upon these alleged promises, the court must grant defendants' motion.

8

Because plaintiff's negligence claim is based upon an alleged breach of contractual duties. There does not appear to be an independent tort basis upon which Bureau asserts his causes of action under this count. The court grants the motion as to the negligence claim because it sounds in contract.

The implied duty of good faith and fair dealing cause of action cannot be an independent basis for recovery. That claim here is based on the underlying contract. Summary judgment must be granted as to this claim.[4]

### E. Count V, Intentional Infliction of Emotional Distress.

Bureau alleges that the defendants intentionally inflicted emotional distress upon him by "fraudulently concealing defects in the Gendron premises, falsely promising to assist Mr. Bureau and failing to adequately provide necessary services."

To recover for intentional infliction of emotional distress, the plaintiff must establish the following: (1) the defendants acted intentionally, recklessly or were substantially certain that severe emotional distress would result from their conduct; (2) the defendants' conduct was so extreme and outrageous as to exceed "all possible bounds of decency" and must be regarded as "atrocious and utterly intolerable in a civilized community;" (3) the defendants' conduct caused the plaintiff emotional distress; and (4) the emotional distress was so severe that "no reasonable man could

---

[4] In reviewing the lease, it appears that some promise was made with respect to air conditioning and plumbing in paragraph 9; however, the court notes that the lease is only generally referenced in the 7(d) statement. This does not qualify as "appropriate record references." M.R.Civ.P. 7(d)(2).

9

be expected to endure it." *Gurski v. Culpovich*, 540 A.2d 764, 766-67 (Me. 1988) (citations omitted).

On the pleadings, Bureau has stated a claim for intentional infliction of emotional distress; however, he did not allege in his Statement of Material Facts that the Gendrons intentionally inflicted emotional distress or, more importantly, that he in fact suffered from emotional distress.

## F. Count VI, Negligent Infliction of Emotional Distress.

In Maine, proof of negligent infliction of emotional distress requires plaintiffs to show that (1) defendants were negligent; (2) plaintiffs suffered emotional distress that was a reasonably foreseeable as a result of defendants' negligent conduct; and, (3) the plaintiffs suffered severe emotional distress. *See Veilleux*, 206 F.3d 92, 129-30 (1st Cir. 2000)(citations omitted). Proof of an underlying tort or a physical injury is no longer required to sustain a negligent infliction claim, *See Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282, 1285 (Me. 1987), and recovery is available even where emotional distress damages are the only damages alleged. *See Salley v. Childs*, 541 A.2d 1297, 1300 n.2 (Me. 1988).

To recover for emotional distress absent some other underlying tort, the Law Court has proceeded cautiously in determining the scope of a defendant's duty to avoid inflicting emotional distress. *Veilleux*, 206 F.3d at 131. The plaintiff must do more than show that the emotional harm was foreseeable. The plaintiff must additionally show that the public policy favors the recognition of a legal duty to

10

refrain from inflicting emotional injury, based upon plaintiff's status and relationship between the parties. *See id.* at 130 (citations omitted). "Only where a particular duty based upon the unique relationship of the parties has been established may a defendant be held responsible, absent some other wrongdoing, for harming the emotional well-being of another." *Bryan R. v. Watchtower Bible and Tract Soc. of New York, Inc.*, 738 A.2d 839, 849 (Me. 1999) (declining to recognize relationship between churches and their members that would give rise to duty to avoid mental injury to their members).

It is not clear whether a broker-buyer relationship is unique enough of a relationship to impose a duty on the Gendrons as a matter of law. If the Law Court has intended to impose a higher duty in the context of negligent infliction of emotional distress, this court might have to engage in duty analysis. If the Law Court did not intend to create a higher standard of duty than simple negligence, then the Gendrons probably had a duty to Bureau.

Nevertheless, in his Statement of Material Facts, Bureau has not alleged any negligent conduct other than the Gendrons' failure to disclose the eminent domain and its effect on the number of parking spaces at the premises. As discussed above, the Gendrons had no duty to disclose defects absent a fiduciary relationship and absent evidence of active concealment. It follows that if the Gendrons had no duty to disclose, then an action of negligent infliction of emotional distress cannot survive summary judgment. In addition, the plaintiff has not alleged in his 7(d)

11

statement that he has suffered severe emotional distress. This court must grant summary judgment with respect to this claim.

## G. Count VII, Breach of Contract based on failure to rebate rent.

Bureau alleges that Gendron agreed to rebate rent in the event of eminent domain taking of any of the Gendron premises pursuant to the lease agreement, but that upon timely demand, Gendron refused. This promise, however, is not specifically alleged in Bureau's Statement of Material Facts.

If the court were to look past another deficiency in plaintiff's Statement of Material facts and look at the lease agreement, Bureau may have a claim for abatement under paragraph 14. His damages, however, would not include emotional distress under a breach of contract claim. *See Marquis v. Farm Family Mutual Ins. Co.*, 628 A.2d 644, 651 (Me. 1993) (holding that insured could not recover emotional distress damages on breach of contract claim because plaintiff did not suffer accompanying physical injury and because the insurance contract was not a special type of contract that warranted recovery for severe emotional distress).

## H. Count VIII, Restitution and Recision.

Bureau incorporates all of his previous allegations into this count and alleges that he is entitled to rescission and restitution for the fraudulent conduct of the defendants. It is not clear whether this count is simply setting forth a request for equitable relief based on his action for fraudulent misrepresentation or whether it is based on a fraudulent inducement theory to void the lease agreement; but in either

12

event Bureau's claims for fraud must be rejected. Bureau's 7(d) statement does not make an allegation of intentional misrepresentation. The court must therefore grant the motion as to this count to the extent that it is based on his fraudulent misrepresentation claim.

## IV. JUDGMENT

The clerk will make the following entry as the judgment of the court:

1. Defendants Del Gendron, Dave Gendron and Gendron Realty's Motion for Summary Judgment is granted.

2. No costs to any party.

SO ORDERED.

DATED: March 21, 2001

Thomas E. Delahanty II
Justice, Superior Court


Thomas F. Hallett – Plaintiff

Susan E. Oram – All Gendrons

Martica S. Douglas – All Gendrons

13