Muse, J.
This action arises from the assignment of a legal malpractice claim to the plaintiff by a former policyholder and client of the defendants. Prior to this *228 assignment, the former client-assignor and the plaintiff-assignee were adversaries in a case to recover for injuries sustained in a motor vehicle accident. The plaintiff-assignee alleges that the attorneys representing the assignor committed malpractice in the underlying action. The plaintiff-assignee further alleges that the assignor’s insurance company committed intentional and negligent misrepresentation. The defendants now move for summary judgment. For the forgoing reasons, the defendants’ Motions are ALLOWED.
BACKGROUND
In 1991, Todd J. Cusick (“Cusick”) drove a motor vehicle that struck the plaintiff, John F. Otis (“Otis”) and another pedestrian, Shannon O’Malley, who is not a party in this case. Following Cusick’s criminal indictment and guilty plea, Otis commenced an action against Cusick in 1992 to recover for personal injuries. The defendants Anthony M. Moccia; Eckert, Seamans, Cherin & Mellott, LLC; and Eckert, Seamans, Cherin & Mellott (collectively, “Eckert Seamans”); represented Cusick in the personal injury action. In September 1998, a jury rejected Cusick’s claims of comparative negligence and awarded Otis $4,000,000, far in excess of the $50,000 per person liability limit the automobile insurance policy the defendant Arbella Mutual Insurance Co. (“Arbella”) issued Cusick. The total damages, including costs and interest, was $6,527,237.90.
The circumstances surrounding the accident from which the civil actions arise are brief but notable. Before 1:00 AM on October 5, 1991, Cusick left a bar where he had spent his evening. An intoxicated Cusick managed to drive his automobile home; however, he struck and severely injured two pedestrians en route. Cusick, in his drunken state, did not stop after the accident, leaving his victims for dead. On May 28, 1992, Cusick pleaded guilty to two criminal charges: (1) operating a motor vehicle under the influence of intoxicating substances and causing serious bodily injury, and (2) leaving the scene of an accident after causing personal injury. While arguing mitigation, counsel for Cusick told the sentencing judge that his client took full responsibility for the accident. The court sentenced Cusick to twenty-eight months in the house of corrections; he served fourteen months of the sentence.
Otis filed suit against Cusick on February 28,1992. This personal injury case went to trial before a jury in September 1998.[2] At trial, Otis’s attorney, who remains his attorney in the instant case, asserted that Cusick’s gross intoxication and excessive speed were the sole causes of Otis’s injuries.[3] Otis contended at trial that he began crossing the road, stopped in the southbound lane (the lane opposite to Cusick’s lane of travel) and yielded to Cusick’s car as it approached. According to Otis, Cusick’s vehicle maintained its high speed, swerved into the southbound lane where Otis stood and struck him. Cusick advanced the defense of comparative negligence and offered evidence of Otis’s own intoxication and negligence while attempting to cross the street. Otis’s attorney urged the jury to reject Cusick’s defense and find him wholly liable for Otis’s injuries.[4] The jury found Otis’s claims persuasive and determined that Otis was not comparatively negligent. Cusick had no means of paying the nearly $7 million judgment. Otis, through his attorney, responded to Cusick’s post-trial motions to amend the judgment, stating, “The point is that although $4,000,000.00 is a sizeable sum of money, it is not at all excessive given Plaintiffs medical bills, extensive injuries, incalculable pain and suffering, permanent disabilities, future pain and suffering, future medical bills, loss of enjoyment of life, and reasonably expected lost income, past, present and future.”
In return for Otis’s agreement not to execute the judgment, Cusick assigned to Otis all claims Cusick had against his insurer and the attorneys who had represented him in the underlying action. In the instant case, Otis, as Cusick’s assignee, alleges that judgment entered against Cusick as a result of Arbella’s and Eckert Seamans’ negligence and breach of duty and Eckert Seamans’ failure to adequately investigate the underlying action and defend Cusick. Otis had successfully argued that Cusick was wholly responsible for the accident and that Otis was not comparatively negligent. The essence of Otis’s present claim is that he is undeserving of the multi-million dollar award in Otis v. Cusick.[5]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and, if viewing the entire record in the light most favorable to the non-moving party, the moving parly demonstrates it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). See also Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 112 (1990) (reasoning that the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law). A party moving for summary judgment that does not bear the burden of proof at trial may demonstrate the absence of a trial issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. at 716. The non-moving party cannot defeat the motion for summaiy judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The court may consider the pleadings, affidavits, answers to interrogatories, depositions, and exhibits submitted in arriving at its conclusion on the motion. Mass.R.Civ.P. 56(c). In de *229 ciding this motion for summary judgment, this court relied upon the pleadings, affidavits, depositions, and answers to interrogatories the parties submitted.
Legal malpractice claims may be voluntarily assigned to another “unless some clear rule of law or professional responsibility, or some matter of public policy, necessitates that the assignment should not be enforced.” N.H. Ins. Co. v. McCann, 429 Mass. 202, 210 (1999). In arriving at this holding, the Supreme Judicial Court analyzed the reasoning of other courts that have considered the issue of assigning legal malpractice claims to the prevailing parly in the underlying proceeding. The public policy issues that could preclude assignment of a malpractice case include threats to an attorney’s duty of loyalty or confidentiality owed to his client and the “specter of open trading of legal malpractice claims.” Id. The SJC distinguished legal claims assigned voluntarily and involuntarily, such as those arising from bankruptcy or foreclosure proceedings, and suggested that the involuntary assignments were more likely to implicate public policy concerns. Id. at 207, n.4. The McCann Court relied on the Maine Supreme Judicial Court’s decision in Thurston v. Continental Cas. Co., 567 A.2d 922 (Me. 1989), which did not find persuasive the public policy concerns that caused many states to proscribe the assignment of legal malpractice cases. Id. at 923, citing Alcmann Serv. Corp. v. Samuel H. Bullock, P.C., 925 F.Sup. 252 (D.N.J. 1996), aff'd., 124 F.3d 185 (3d Cir. 1997) (“A legal malpractice action is not a commodity to be sold to a bidder who has never had a relationship with the lawyer”), and Picadilly, Inc. v. Raikos, 582 N.E.2d 338 (Ind. 1991) (“Our own conclusion that legal malpractice claims should not be assigned is based on . . . our particular concern about two issues: the need to preserve the sanctity of the client-lawyer relationship, and the disreputable public role reversal that would result during the trial of assigned malpractice claims . ..”). The Thurston and McCann Courts found persuasive economic efficiency arguments whereby the highest utility user is provided the opportunity to realize the value of a malpractice case because it is the parly with a clear interest and the time, energy and resources to bring the suit. Thurston v. Continental Cas. Co., 567 A.2d at 923. See generally N.H. Ins. Co. v. McCann, 429 Mass. 202. The Massachusetts Supreme Judicial Court declined to outright prohibit the assignment of legal malpractice claims and opted instead to examine such claims on a case-by-case basis. N.H. Ins. Co. v. McCann, 429 Mass. at 209. In addition, the Supreme Judicial Court did not consider judicial estoppel principles in allowing the assignment of the legal malpractice claim in McCann, supra, because the underlying proceeding resulted in a settlement between the parties.
Massachusetts courts have yet to fully enumerate the specific requirements for judicial estoppel. Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176, 184 (1998). Although the SJC and the Appeals Court did not begin to recognize judicial estoppel until the last decade, the SJC has “long adhered to the principle that ‘[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial.’ " E. Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996), and cases cited. Judicial estoppel is broader: “a party in the second action may rely on judicial estoppel, even though not a party in the first action.” Id. A parly will be estopped from further pursuing its claim if the party was “successful in its first assertion of its inconsistent position” and if the party seeks to “use the judicial process in an inconsistent way that the court should not tolerate.” Fay v. Fed. Nat’l Mortgage Ass’n, 419 Mass. 782, 783, 788 (1995); see also Alcmann Serv. Corp. v. Samuel Hi Bullock, P.C., 925 F.Sup. at 258 (reasoning that a party is compromising the strength of its underlying claim in a manner implicating judicial estoppel when it has made representations in court in one proceeding and then proposes to contradict those representations in a subsequent proceeding).[6]
At issue is whether this court will honor Cusick’s assignment of his legal malpractice claim to Otis, who was Cusick’s adversary in the underlying litigation. Different jurisdictions have conflicting views regarding the applicability of judicial estoppel as it applies to the assignment of legal malpractice claims, and the doctrine is continually evolving.
This court need not look beyond McCann to arrive at its decision. McCann allows this court to consider the facts and circumstances that distinguish it from the instant case. A legal malpractice case that arises from a previously litigated matter necessarily becomes a trial within a trial, and for this reason, enforcement of the assignment at issue contravenes public policy and creates a “disreputable public role reversal” that will yield confusing proceedings in the malpractice case. In the negligence case, Otis v. Cusick, Civil No. 92-00545 (Norfolk Super.Ct. Sept. 23, 1998) (Brady, J.), Otis had the burden of proving that Cusick was liable for Otis’s injuries. Otis’s position was veiy clear, and he met this burden. In the instant case, Otis and his lawyers must necessarily bear the burden of proving a proposition directly contrary to the proposition they successfully proved in 1998. They now assert that Otis was comparatively negligent, whereas in the underlying case, Otis successfully proved to a jury that no negligence could be attributed to him. “Because of the unique nature of the trial within a trial, [the plaintiffs] change in position would be obvious to all the jurors hearing the evidence in the instant case.” Picadilly, Inc. v. Raikos, 582 N.E.2d at 345 (determining that “role reversal” problem was exacerbated by the fact that the same attorney represented the plaintiff in both his initial action and the subsequent *230 malpractice action).[7] This “role reversal” confusion was not an issue in McCann because the malpractice alleged did not concern actions or representations made during trial. N.H. Ins. Co. v. McCann, 429 Mass. at 203-05. Furthermore, the malpractice alleged in McCann did not require the assignee to adopt a position contrary to one he assumed in the original proceeding, and the malpractice claim lacked conflicts and inconsistencies with the underlying claim. Id.
The McCann Court was also not persuaded by threats to the defending attorney’s duty of loyalty and duty of confidentiality. Id. at 210. Both are privileges intended to protect the defendants’ client, Cusick; however, a client may knowingly waive these privileges. The SJC noted the McCann assignor’s status as a sophisticated business entity that “could assess the economic value of the claim against the possibility that the assignment could lead to disclosures that otherwise would be confidential, and make an informed decision whether one consideration outweighed the other.” Id. Cusick, in contrast, is an individual whose legal acumen is marginal at best. Although he executed agreements with Otis to assign the legal claims and acknowledged that the waiver implicated his attorney-client privilege, the evidence suggests that Cusick’s understanding of the assignment and waiver was limited and the assignment was motivated predominantly by his desire to be released from liability.[8] Deposition of Todd J. Cusick at 69-72, 207. There is a strong indication in the instant case that Cusick did not “adequately comprehend the extent to which [his] confidences might be disclosed if the malpractice claim was pursued.” N.H. Ins. Co. v. McCann, 429 Mass. at 210.
To allow one party to assign its legal malpractice claim to his adversary in the underlying litigation would shatter the public’s confidence in the legal profession. The judicial forum is not comparable to a high school debate where a party argues an issue in the morning and the opposing argument in the afternoon. The principles of judicial estoppel as adopted in Massachusetts indicate that Otis is attempting to “use the judicial process in an inconsistent way that this court should not allow.” Accordingly, summary judgment for the defendants is appropriate.
Assuming, arguendo, that judicial estoppel does not bar the plaintiffs claims against the defendants, the claims against Arbella for intentional and negligent misrepresentation must fail because the plaintiff cannot establish essential elements of these claims. Intentional misrepresentation exists when the defendant knowingly makes a false statement of material fact to induce the plaintiff to act, and the plaintiff relies on the false statement to his detriment. Macoviak v. Chase Home Mortgage Corp., 40 Mass.App.Ct. 755, 760 (1996). Negligent misrepresentation does not require the defendant’s knowledge; the plaintiff must merely rely on the false statement to his detriment. Nei v. Burley, 388 Mass. 307, 311 (1983). A false statement is made knowingly when the defendant possessed actual knowledge of the falsity when he made the statement. Maxwell v. Ratcliffe, 356 Mass. 560, 562 (1969). Alternatively, a false statement is knowingly made if it is susceptible to actual knowledge and not an opinion or promise and made willfully with reckless disregard for the truth. Powell v. Rasmussen, 355 Mass. 117, 118 (1969).
Pursuant to this court’s (Gants, J.) order, Otis set forth four written sources of Arbella’s alleged misrepresentations to Cusick: (1) the standard Massachusetts Automobile Insurance Policy, 5th Edition; (2) a letter from Arbella to Cusick, dated October 21, 1991; (3) a letter from Arbella to Cusick, dated April 17, 1992; and (4) Arbella’s promotional and advertising materials. Absent from the record before this court is evidence that Arbella knew that its statements to Cusick regarding defending and investigating the claim were false when made. The statements contained in the policy and correspondence were mere promises to do something in the future and do not constitute intentional representation.
Furthermore, Cusick admitted he did not rely on any Arbella documents or correspondence with respect to the alleged misrepresentations. He does not indicate that he ever relied on the policy, letters or promotional materials. In fact, Cusick stated under oath that he did not recall seeing any of the alleged Arbella misrepresentations, and if he did see the alleged misrepresentations, he did not rely on them. Deposition of Todd J. Cusick, at 161-71. Otis has no reasonable expectation of proving at trial Cusick’s reliance on the alleged misrepresentations.
ORDER
For all of the reasons contained herein, it is ORDERED that the defendants Arbella Mutual Insurance Company and Eckert, Seamans, Cherin & Mellott, LLC’s Motions for Summary Judgment be ALLOWED.

Oüs’s action against Cusick was consolidated with five other actions, which settled at various times prior to the trial of Otis’s personal injury case. Three of the settled actions were for the other injured pedestrian, Shannon O’Malley.

Excerpt from Trial Transcript Day 4, Closing Argument of Attorney Paul Driscoll for the Plaintiff, John Otis:
All right, [Todd Cusick’s] drunk, he’s driving his own car, he hits these two young men, leaves them for dead, turns around and goes the other way.
He wasn’t driving, he was speeding. He was still accelerating. He had it up to 65 in a 35-mile-an-hour zone, 65 miles and [sic] hour, heavily built-up commercial area.

Excerpt from Trial Transcript Day 4, Closing Argument of Attorney Paul Driscoll for the Plaintiff, John Otis, at 229-30:
Now what’s the argument? The argument is that [John Otis’s blood alcohol percentage is] point, whatever it is, *231 one four or something. What are we supposed to do then, jump up in the air? What are we supposed to do, dive out of the way? The guy is going 65 miles an hour in the northbound lane, and like that, it is in the southbound lane.
So that’s the argument. The argument is comparatively negligent? I entreat you, don’t buy the blame the victim defense. And on that question where it says fifty/fifty, added up to a hundred, who was responsible? I entreat you to put down zero for Mr. Otis. No comparative negligence.

The Introduction to the Complaint reads:
In this action, plaintiff asserts claims against the named defendants who, because of their inadequate investigation and defense, caused a judgment to enter against plaintiffs assignor, one Todd Cusick, in the sum of $6,527,237.90. The judgment entered as a result of the defendants’ negligence, breach of contract, breach of implied covenant of good faith and fair dealing, and intentional and negligent misrepresentations.

The plaintiff-assignee in the malpractice case prevailed with a seven million dollar default judgment in the underlying case by representing in an affidavit that it was owed seven million dollars. Alcmann Serv. Corp. v. Samuel Hi Bullock, P.C., 925 F.Sup. 252, 256 (D.N.J. 1996). In the assigned malpractice case, the plaintiff-assignee, represented by the same attorney as in the underlying case, now asserted that he was not owed that amount and, instead, some of the seven million dollar judgment was a result of the assignor’s attorney’s malpractice. Id.

The Indiana Supreme Court examined the precise issue this court faces today. The Picadilly Court observed that a legal malpractice claim is a chose in action and traditionally unassignable except on rare occasions. The historical reasons for non-assignabliiy of choses in action range from issues of privity to champerty and maintenance to the lack of commercial necessity. Slowly, the courts weakened the noose on assigned cases, eventually allowing the assignment of contract and tort cases that were not personal in nature. The Picadilly Court considered a common fact pattern that often led to the assignment of choses in action — the assignor’s death. “[Although survival [of an action] is a frequent test for assignability, it is not the only test.” Picadilly, supra, at 341. Recognizing that rules of law often outlive the reason for their creation, the Indiana Supreme Court rationalized that “[ajssignment should be permitted or prohibited based on the effect it will likely have on modem society, and the legal system in particular.” Id. After evaluating the relevant public policy considerations, the Court held an assignment of a legal malpractice claim to the assignor’s adversary in the underlying claim to be invalid.

Deposition of Todd J. Cusick, excerpted at page 69-72:
Q: What was your intention in signing this document?
A: My intention was to be relieved of the debt, period.
Q: Ifyou go to the bottom of Page 2, the last Whereas clause on the page. The first sentence says, “Defendant,” which is referring to you, “has the present right to institute one or more claims against Arbella, Anthony and Eckert.” Do you see that?
A: Yes, I do.
Q: What was your understanding as to claims you had the right to institute?
A: Say that again.
Q: Did you understand that you had any claims against Arbella, Anthony [Moccia] or Eckert, Seamans when you signed this document?
A: What do you mean by claims?
Q: What is your understanding of the purpose of this Whereas clause?
MR. DWORK: The last Wheareas clause on Page 2?
Q: Yes.
A: I don’t know.
Q: Did you understand that you had claims against Anthony [Moccia] when you signed the document?
A: No.
Q: Did you understand you had claims against Arbella when you signed this document?
A: No.
Q: Did you understand that you had claims against Eckert and Seamans [sic] when you signed this document?
A: No.
Q: Did you believe when you signed this document that Anthony [Moccia] had breached certain contractual and legal obligations and duties?
A: I’m not sure.
Q: When you signed the document did you believe Anthony had breached legal obligations to you?
MR. DWORK: He said he wasn’t sure.
A: I’m not sure.
Q: With regard to the legal obligations you don’t know one way or another whether Anthony [Moccia] had breached any obligation to you.